Phillip E. Benson, CA Bar #97420
WARREN ■ BENSON Law Group
620 Newport Center Dr., Ste 1100
Newport Beach, CA 92660
Tel: 949-721-6636; Fax: 952-955-5177
philbenson@warrenbensonlaw.com

Attorneys for Plaintiff
Aaron Tribble

FILED
CLERK U.S. DISTRICT COURT
2008 SEP 15  AM 11:51
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON TRIBBLE,<br><br>    Plaintiff,<br><br>vs.<br><br>RAYTHEON COMPANY,<br><br>    Defendant. | CASE NO. CV 07-3058 JFW (SHX)<br><br>FIRST AMENDED COMPLAINT FOR VIOLATION OF 31 U.S.C. §3730(h) OF THE FALSE CLAIMS ACT AND WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>DEMAND FOR JURY TRIAL |

BY FAX

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff Aaron Tribble amends his complaint and complains and alleges as follows:

### I.
### JURISDICTION

1.   This is an action brought pursuant to 31 U.S.C. § 3730(h), the employment discrimination provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and for

FIRST AMENDED COMPLAINT

1

wrongful termination in violation of public policy. This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3730(h), 31 U.S.C. § 3732(a) and 28 U.S.C. §§1331 and 1367.

## II.
## VENUE

2. Venue is proper in this district under 31 U.S.C. § 3732(a) because the defendant transacts business in this district and can be found in this district and certain of the acts proscribed by the False Claims Act as alleged herein occurred in this district.

## III.
## PARTIES

3. Plaintiff Aaron Tribble ("Tribble") resides in this district. Tribble was employed by the defendant until his wrongful termination in or about May 2006.

4. Defendant Raytheon Company ("Raytheon") is a Delaware corporation headquartered in Waltham, Massachusetts. Raytheon is a major defense contractor which operates through a number of business segments located throughout the United States. Raytheon Network Centric Systems ("RNCS"), headquartered in McKinney, Texas, is a business segment of Raytheon. RNCS develops command and control systems, integrated communications systems and netted sensor systems. RNCS operates several Raytheon subdivisions, including Raytheon Combat Systems ("RCS") in El Segundo, California, and Raytheon Vision Systems ("RVS") in Goleta, California.

## IV.
## BACKGROUND

5. RVS manufactures the Second Generation Dewar Assembly ("SGDA") at its facilities in Goleta, California and sends SGDA units to RCS in El Segundo, California for installation in FLIR systems. The SGDA is a primary and critical component of Raytheon's HIRE II FLIR system. FLIRs are infrared cameras that detect thermal energy to create a "picture" for video output. FLIR systems are used in situations of reduced visibility such as at night, in fog, smoke or haze or to detect warm objects against a cold background in the dark. In military

FIRST AMENDED COMPLAINT

combat, FLIR systems are used for gun and missile fire control, targeting and surveillance. FLIRs are used in naval vehicles, fixed wing aircraft, helicopters and armored fighting vehicles.

6. RCS delivers HIRE II FLIR systems to General Dynamics Land Systems (GDLS) and others for military application. GDLS incorporates Raytheon HIRE II FLIR systems in the production of MGS Stryker armored fighting vehicles and other defense programs, including the LPD and the EFV, under various United States Department of Defense contracts and subcontracts.

7. Raytheon has been qualified to sell its HIRE II FLIR systems for use in United States Department of Defense weapons procurement programs and to receive monies derived from the United States Government for the use of its HIRE II FLIR systems in such programs by representing that such systems meet or exceed all applicable quality and quality control requirements for such systems and programs including all mandatory tolerance specifications, failure analysis requirements and non-conformance reporting.

8. Between approximately 2000 and approximately September 2008, Raytheon knowingly concealed a defect in the SGDA component of the HIRE II FLIRs it delivered to GDLS and other government contractors for use in various United States Government weapons procurement programs. Specifically, Raytheon knew that the A-12 epoxy used to hold the Thermal Strut Assembly to the coldfinger could not withstand the gun shock tolerances required by the applicable specifications. Raytheon knew that the A-12 epoxy bonds could crack or break, thus allowing the coldfinger to move far enough to rip the electrical interconnects off the Focal Plane Assembly (FPA), resulting in a complete failure of the FLIR. Raytheon knew that as many as half of all customer returns of failed SGDA units contained cracked or broken epoxy bonds. Despite such knowledge, however, Raytheon concealed the defect from its customers and the United States Government and continued to deliver HIRE II FLIRs for use in weapons systems destined for use in combat by United States military personnel.

9. Between approximately 2000 and September 2008, Raytheon submitted false claims for payment to contractors and others, wherein the United States Government either

FIRST AMENDED COMPLAINT

provided the money requested or reimbursed the recipient of Raytheon's claims, for the delivery of FLIRs that Raytheon falsely represented in certificates and other documents as compliant with all required and applicable specifications, including all applicable gun shock tolerance specifications. Raytheon's claims for payment were knowingly false in that Raytheon knew that epoxy bonds that held the SGDA Thermal Strut Assembly to the coldfinger could crack or break at tolerances less than the gun shock tolerances required by the applicable specifications. Tribble is informed and believes, and thereon alleges, that approximately 60-80 defective SGDA units, alone, were built into Raytheon HIRE II FLIRs to be used for the MGS Stryker program.

## V.
## FIRST CLAIM FOR VIOLATION OF 31 U.S.C. § 3730(h)
## AGAINST RAYTHEON

10.     Tribble incorporates by reference herein the allegations made above in paragraphs 1-9, inclusive.

11.     Between January 2002 and May 2006, Tribble was employed by Raytheon at its RVS facility in Goleta, California as a Senior Systems Engineer. In the Spring of 2005, Tribble conducted a failure analysis on an SGDA which had been returned by a customer. The unit had failed gun shock testing which caused the loss of video performance. During the course of his failure analysis investigation, Tribble determined that the failure was caused by broken epoxy bonds using A-12 epoxy and that the epoxy failed gun shock testing at a tolerance less than required by the applicable specification. Tribble saw the same failure in another customer return in February 2006. Tribble was informed that the defect in the epoxy had been known to Raytheon for several years and that nearly half of all SGDA customer returns required replacement of the A-12 epoxy bonds during rebuild because of cracking.

12.     Based on his investigation and analysis, Tribble informed Raytheon that the SGDA units had a "latent defect" that was linked to the use of the A-12 epoxy. Tribble's program manager told Tribble that he should not have used the phrase "latent defect" because it could cause problems for Raytheon. Despite Tribble's disclosure, Raytheon continued to conceal

FIRST AMENDED COMPLAINT

4

this latent defect from its customers and the United States Government and continued to deliver HIRE II FLIRs for use in weapons systems destined for use in combat by United States military personnel.

13.   Consistent with Raytheon's obligations to its government contract customers and pursuant to regulatory and government contract quality requirements, Tribble recommended a program of thermal shock testing to either isolate the cause of the failure in the A-12 epoxy bonds or prove that the initial qualification testing was still valid. Raytheon knew that if it conducted such required testing, it would also be required to report the results of such testing to the government and its government contract customers which could pose potentially serious legal problems for Raytheon. Raytheon had been routinely and falsely advising its customers that SGDA failures were the result of customer mishandling. In order to continue to conceal the defect from its customers and the United States, Raytheon responded to Tribble's statements that the SGDA failed to comply with the required gun shock tolerance requirements because of a defect and Tribble's recommendations for further testing by removing him from his duties, downgrading his performance reports and wrongfully terminating him in May 2006.

14.   By uncovering the A-12 epoxy defect in Raytheon's FLIRs and by telling Raytheon that the SGDA units had a "latent defect" requiring a qualification investigation which would lead to a formal report to the United States, Tribble engaged in conduct protected under the False Claims Act that placed Raytheon on notice that its unlawful and knowing concealment of the defect for years from its government contract customers would be exposed. As a result of engaging in such lawful and protected conduct, Tribble was discriminated against in the terms and conditions of his employment by Raytheon in a manner that is likely to deter other Raytheon employees from engaging in activity protected under the False Claims Act. As a result of such discrimination, Tribble has suffered damages, the full amount of which will be proven at the time of trial.

## VI.

### SECOND CLAIM FOR WRONGFUL TERMINATION IN VIOLATION

FIRST AMENDED COMPLAINT

## OF PUBLIC POLICY AGAINST RAYTHEON

15. Tribble incorporates by reference herein the allegations made above in paragraphs 1-14, inclusive.

16. Raytheon violated the public policies of the State of California by stripping him of his duties and terminating him, in retaliation for engaging in activities protected under the federal False Claims Act. By wrongfully stripping Tribble of his duties and terminating him in retaliation for engaging in activity protected under the federal False Claims Act, Raytheon has caused damage to Tribble's finances, emotions and reputation, the full amount of which will be proven at the time of trial.

17. Raytheon's conduct in wrongfully stripping Tribble of his duties and terminating him in retaliation for engaging in conduct protected under the False Claims Act was willful, oppressive and fraudulent and done in willful disregard of the rights and safety of others. Raytheon's motive in firing Tribble was to continue to conceal from the federal government the defect in the SGDA's and its violations of the federal False Claims Act involving a critical component of a combat weapons system by silencing any employee who dared to speak up. Raytheon terminated Tribble as an example to other Raytheon employees that they too would jeopardize their employment and financial security if they took any steps that could lead to the disclosure of the known defect in the SGDA to the United States Government and to punish Tribble for doing so. Consistent with Raytheon's motive to continue to conceal the defect from its customers, including the United States Government, after terminating Tribble, Raytheon threatened to use its corporate wealth and power to wage litigation against Tribble, now unemployed, unless he issued a retraction of a statement that he had made to a Raytheon customer that disclosed his opinion about the defect in the SGDAs. Accordingly, punitive damages should be awarded against Raytheon.

**PRAYER**

FIRST AMENDED COMPLAINT

**WHEREFORE,** Plaintiff prays that judgment be entered as followed:

A. For the First Claim, double back pay, front pay in lieu of reinstatement, all other general and special damages, including attorney's fees, costs and reasonable expenses;

B. For the Second Claim, all general and special damages and punitive damages in an amount that will deter the defendant from repeating its misconduct in the future and which will serve as an example to others; and

C. For any and all other relief to which the plaintiff may be entitled.

### JURY DEMAND

Plaintiff requests trial by jury.


Dated: September 12, 2008                    Respectfully submitted,


                                             By: _____
                                                 Phillip E. Benson

                                                 WARREN■BENSON Law Group
                                                 Attorneys for Plaintiff
                                                 Aaron Tribble

FIRST AMENDED COMPLAINT

## PROOF OF SERVICE

I, Phillip E. Benson, hereby declare under penalty of perjury under the laws of the United States that I am over the age of 18 and that on September 13, 2008, I deposited in the United States Mail at Watertown, Minnesota, First Class postage prepaid, copies of the attached First Amended Complaint for Violation of 31 U.S.C. §3730(h) of the False Claims Act and Wrongful Termination in violation of Public Policy, addressed as follows:

Brian Young, Esq.
U.S. Department of Justice
P.O. Box 261
Washington, D.C. 20044

Executed September 13, 2008, at Watertown, Minnesota.

Phillip E. Benson